IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MITZI ELAINE DAILEY
    *Appellant*,

    v.                            Civil Action No. ELH-16-3065

ROBERT S. THOMAS, II
    *Appellee*.

### MEMORANDUM

Mitzi Elaine Dailey, the self-represented Debtor/Appellant, noted an appeal to this Court from an order issued by the United States Bankruptcy Court for the District of Maryland (Schneider, J.), dismissing Dailey's Chapter 13 bankruptcy case, JFS-15-25464 ("Bankruptcy Case"). ECF 1; ECF 1-1. Dailey also appeals the Bankruptcy Court's "denial" of her emergency motion for relief from violations of automatic stay, pursuant to 11 U.S.C. § 362 ("Emergency Motion"). *Id.*

Dailey's brief is at ECF 3-1 ("Appellant Brief").[1] Robert S. Thomas, II, Appellee/Trustee, filed an opposing brief. ECF 6 ("Appellee Brief").[2] No reply has been filed and the time to do so has expired. *See* Fed. R. Bankr. P. 8018(a)(3); Local Rule 105.2(a).

The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers."

---

[1] On September 16, 2016, Dailey incorrectly filed her brief in both the Bankruptcy Case and in an adversary proceeding filed in her Bankruptcy Case. *See* ECF 80 in JFS-15-25464; ECF 24 in JFS-16-0257. The Appellant Brief was filed in ELH-16-3065 and JFM-16-3073, a related case, as part of the appendices.

[2] Gerard Vetter was the original appellee/trustee. ECF 1. However, Vetter resigned as the Interim Chapter 13 Trustee and Thomas was appointed as Standing Chapter 13 Trustee. Therefore, he has been substituted as the appellee/trustee in this case. *See* ECF 5; ECF 7.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989).  I note, however, that although Dailey is self-represented, she is an attorney and a member of the Maryland Bar.  *See* ECF 3-1 at 7.

No hearing is necessary to resolve the appeal.  *See* Local Rule 105.6.  For the reasons that follow, I shall affirm the Order of the Bankruptcy Court dismissing the Bankruptcy Case.

## I.  Factual and Procedural Background[3]

This appeal is related to several other cases in this Court: GLR-15-2527; JFM-16-0299; and JFM-16-3073.

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Of import here, in *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990), the Court recognized that a district court may "properly take judicial notice of its own records."

---

[3] Although Dailey has provided an appendix to her appeal (ECF 3), the appendix is incomplete and does not contain facts sufficient to provide an adequate history of the case.  In order to provide sufficient background, I have utilized the record from the Bankruptcy Case (JFS-15-25464), two related adversary proceedings (JFS-15-0611 and JFS-16-0257, both of which were appealed to this Court, JFM-16-0299 and JFM-16-3073), and an employment discrimination case (GLR-15-2527).

Cases JFM-16-0299 and JFM-16-3073 involved appeals from the Bankruptcy Court's dismissal of adversary proceedings filed by Dailey in her Bankruptcy Case. *See* JFS-15-0611 ("First Adversary Proceeding") and JFS-16-0257 ("Second Adversary Proceeding"). In JFM-16-0299, Judge J. Frederick Motz affirmed the Bankruptcy Court's dismissal of the First Adversary Proceeding. *See* ECF 10 (Memorandum); ECF 11 (Order). And, in JFM-16-3073, Judge Motz affirmed the Bankruptcy Court's dismissal of the Second Adversary Proceeding. ECF 10.

The adversary proceedings are related, in turn, to an employment discrimination case filed by Dailey in this Court on August 26, 2015. *See* GLR-15-2527 ("Employment Case"). By Memorandum Opinion (ECF 42) and Order (ECF 43) of April 18, 2016, Judge George Levi Russell, III dismissed the Employment Case. The Fourth Circuit affirmed on November 4, 2016. ECF 48; *see Dailey v. Lew*, __ Fed. App'x __, No. 16-1464, 2016 WL 6543457 (4th Cir. Nov. 4, 2016).

In the matter *sub judice*, Dailey's Appellant Brief (ECF 3-1) is identical to the one she filed in the Second Adversary Proceeding. *See* ECF 3-4 in JFM-16-3073. The arguments contained in the brief are largely directed to the appeal as to the Second Adversary Proceeding.

On August 26, 2015, Dailey, an attorney licensed in Maryland and an employee of the Internal Revenue Service ("IRS"), United States Department of the Treasury ("Treasury" or "the Agency"), filed suit in this Court against Jacob J. Lew, then Secretary of the Treasury, and nine other individual federal employees who worked at the Agency, asserting allegations of employment discrimination and retaliation. *See* GLR-15-2527, ECF 1. Dailey accused the defendants of wrongfully charging her with Away Without Leave ("AWOL") hours "on five specific dates in March and August 2015" (GLR-15-2527, ECF 42 at 5), totaling 80 hours or 10

days.  *Id.* at 20.  Dailey also claimed that her employer withheld $3744 in salary for 72 of the AWOL hours.  *Id.*, ECF 1 at 12-13.

Lew filed a motion to dismiss or, in the alternative, for summary judgment (*id.*, ECF 24).[4] Dailey filed a motion for preliminary injunctive relief (*id.*, ECF 30) and a temporary restraining order (*id.*; ECF 31), seeking to enjoin the Agency from taking any measures to prevent her from teleworking or from charging her with AWOL.  Thereafter, on April 18, 2016, Judge Russell granted Lew's motion, denied Dailey's motions, and dismissed the case.  GLR-15-2527, ECF 42 (Memorandum Opinion); ECF 43 (Order); *see Dailey v. Lew, et al.*, CV GLR-15-2527, 2016 WL 1558150 (D. Md. Apr. 18, 2016). Dailey noted an appeal to the Fourth Circuit.  GLR-15-2527, ECF 44.  As indicated, the Fourth Circuit affirmed.  *Id.*; ECF 48.

On November 6, 2015, while the Employment Case was pending, Dailey filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code.  *See* JFS-15-25464, ECF 1.  Soon after, Dailey filed a Chapter 13 Plan, which she later amended.

A few days after Dailey filed for bankruptcy, Dailey filed an adversary proceeding against three IRS employees who were also defendants in the Employment Case –Katherine D. Heyden, Lawrence W. Ford, and Milissa K. Riggs.  She also sought, *inter alia*, an injunction to prevent the Agency and her supervisors from implementing a five-day suspension, without pay, based on a finding that Dailey had been AWOL.  *See* JFS-15-0611, *i.e.*, the First Adversary Proceeding, ECF 1.[5] The United States moved to substitute itself as the sole defendant and to

---

[4] In the Motion, Lew asserted that Dailey had "improperly named as Defendants nine other individual federal employees who worked at the Agency… Accordingly, Secretary Lew, as the sole proper party Defendant in his official capacity, move[d] to dismiss the nine other Agency officials as Defendants from this case." *Id.* at 1, n. 1.

[5] The five-day suspension was in addition to the plaintiff's lost pay for the AWOL hours.

dismiss the adversary proceeding on the ground that the law foreclosed Dailey from using an adversary proceeding as an "end-run" around her Employment Case. JFS-15-0611, ECF 11 at 2.

On January 20, 2016, the Bankruptcy Court granted the United States's motion to substitute and to dismiss the First Adversary Proceeding, with prejudice. JFS-15-0611, ECF 13. Dailey noted an appeal to this Court and, on May 26, 2016, Judge Motz affirmed the Bankruptcy Court's dismissal of the First Adversary Proceeding. *See* JFM-16-0299, ECF 10 (Memorandum); ECF 11 (Order). Judge Motz said, *id.*; ECF 10 at 1-2: "The Bankruptcy Court's ruling was clearly correct. Employment discrimination actions are non-core proceedings reserved for exclusive jurisdiction by the district courts….The Bankruptcy Court lacked jurisdiction over the employment discrimination claim . . . ."

The next day, May 27, 2016, Dailey filed the Second Adversary Proceeding in the Bankruptcy Court against three IRS employees: Katherine D. Heyden, Robert L. Bryant, and Milissa K. Riggs. JFS-16-0257, ECF 1. The allegations in the Second Adversary Proceeding were similar to those in the First Adversary Proceeding. *See id.*, ECF 1. The United States again moved to substitute itself as the proper defendant and to dismiss. *Id.*, ECF 6.[6]

Meanwhile, in the Bankruptcy Case, Dailey filed a Chapter 13 Plan on November 20, 2015. JFS-15-25464, ECF 17. The plan called for payment to the Chapter 13 Trustee in the amount of $760 per month for 60 months. *Id.*, ECF 17. On December 31, 2015, the Debtor filed an Amended Chapter 13 Plan, which called for the same proposed payments to the Trustee. *Id.*, ECF 25.

On January 15, 2016, the Bankruptcy Court found that the proposed plan did not fulfill the requirements for confirmation, as set forth in 11 U.S.C. § 1325. Accordingly, the

---

[6] As discussed *infra*, the Bankruptcy Court dismissed the Second Adversary Proceeding on August 22, 2016. JFS-16-0257, ECF 19.

Bankruptcy Court entered an Order denying confirmation of the Chapter 13 Plan, with leave to amend. *Id*, ECF 29.

The Debtor filed an amended Chapter 13 Plan on February 23, 2016. *Id.*, ECF 35. At a hearing on March 23, 2016, the Bankruptcy Court determined that the amended plan did not fulfill the requirements for confirmation, as set forth in 11 U.S.C. § 1325. *Id.*, ECF 39. The court entered an Order denying confirmation, with leave to amend. *Id.*

The Debtor filed her fourth Chapter 13 Plan on April 6, 2016. *Id.*, ECF 41 ("Plan"). Consistent with each of the previously proposed Chapter 13 plans, this Plan proposed payments of $760 per month for 60 months. *Id.* However, on May 3, 2016, the Trustee filed an objection to the Plan. ECF 44. According to the Trustee, the Debtor had failed to tender two of the five payments that had come due under the terms of the proposed Plan, totaling $1,520. *Id.* at 2.

The Bankruptcy Court held a hearing on May 11, 2016, at which it considered the Plan and the Trustee's objection. JFS-15-25464, ECF 45. The hearing was continued, first until July 27, 2016 (*id.*, ECF 65) and then to August 22, 2016. *See id.*, ECF 66; ECF 70.

In the interim, on June 1, 2016, the Debtor filed her Emergency Motion for relief from violation of automatic stay, pursuant to 11 U.S.C. § 362. *Id.*, ECF 51. In the Emergency Motion, the Debtor alleged that the IRS violated the automatic stay by imposing a five-day suspension on her, without pay, from April 25, 2016 through April 29, 2016, as discipline for the charge of being AWOL. *Id.* Dailey noted that after she filed for bankruptcy, the IRS filed its proof of claim on November 19, 2015, for taxes owed. *Id.* at 4. She asserted that the withheld wages are "property of the estate" and moved that they be turned over to the Chapter 13 Trustee. *Id.* at 6.

In its opposition to the Emergency Motion (JFS-15-25464, ECF 55), the IRS argued that it "acted lawfully in suspending Debtor and thus did not violate the automatic stay." *Id.* at 3. The IRS explained, *id.*:

> [T]he IRS proposed to suspend Debtor for five days without pay on November 5, 2015 – before she filed for Chapter 13 bankruptcy – based on multiple occasions of being [AWOL] and her failure to follow proper leave procedures…The IRS had cause to propose this discipline and the timing refutes any suggestion that the IRS ultimately imposed the suspension "solely because" Debtor filed for bankruptcy.

The IRS also argued, *id.* at 4: "Under Debtor's employment with the IRS, the IRS had the right to suspend her for cause and properly did so – thus, Debtor (and, by extension, the estate) is not legally entitled to these wages withheld during the five-day suspension." Moreover, the IRS claimed that it "did not seize and use Debtor's withheld wages to pay or otherwise offset its pre-petition claim." *Id.*

On June 29, 2016 the Trustee moved to dismiss the Bankruptcy Case for "material default in plan payments," based, *inter alia*, on "[t]he failure of the Debtor to maintain timely plan payments as required by §1326 of the Bankruptcy Code." JFS-15-25464, ECF 56 ("Motion to Dismiss"). In the Motion to Dismiss, the Trustee claimed Dailey had defaulted on four payments due under the proposed Plan, totaling $3,040. *Id.*

Dailey opposed the Motion to Dismiss. JFS-15-25464, ECF 67 ("Opposition"). She acknowledged that she had fallen behind on her proposed Plan payments (*id.* at 2),[7] but she claimed that the "sole reason" that she "fell behind" was the "unlawful actions" of her employer, the IRS, including the imposition of five days without pay in April 2016. As a result, she maintained she was "denied an entire week of wages," in addition to the loss of ten days of pay

---

[7] In the Opposition, Dailey appears to assert that as of July 14, 2016, there was only one remaining payment that she had failed to tender. ECF 67 at 1.

for her AWOL, assessed in 2015. *Id.* Dailey maintained that her "financial condition" was "dire." *Id.*

The Bankruptcy Court held a hearing on August 22, 2016, regarding the confirmation of the Plan, the Motion to Dismiss, and the Emergency Motion. JFS-15-25464, ECF 70; ECF 69; ECF 59. At the hearing, counsel for the Trustee represented to the Court that the Debtor remained in default under the terms of the proposed Plan, having only tendered six payments, totaling $4,560. *See* JFS-15-25464, August 22, 2016 Hearing Transcript ("Hearing Transcript") at 7;[8] *see also* ELH-16-3065, ECF 6 at 3. But, as of August 22, 2016, a total of nine payments had come due, totaling $6,840. *See* Hearing Transcript at 7. Therefore, according to the Trustee, the debtor defaulted on three payments, totaling $2,280. *Id.*

The Trustee also argued that other issues with the proposed Plan remained unresolved, including, *inter alia*, "[t]he debtor's failure to provide for payment of all disposable income to the Chapter 13 plan…[T]he monthly disposable income on Schedule J is $1,536, which is substantially less [sic] than the proposed plan payment of $760." Hearing Transcript at 3.

Dailey acknowledged that she had defaulted on her proposed Plan payments, but reiterated that the actions of the IRS, including withholding her pay for being AWOL, were to blame for her default. *See id.* at 4-5. Dailey also admitted that at the confirmation hearing on May 11, 2016, the bankruptcy judge had provided Dailey with "two additional months…to get caught up on the payments. [The Judge] advised that I definitely had to get caught up on them[.]" *Id.* at 5.

Thereafter, Judge Schneider said, *id.* at 7-8:

---

[8] This transcript is available in paper format only.

Unfortunately the case is going to have to be dismissed. There are so many problems here, and we've given you time to try to correct these. And so far, you're still in default.

There are problems with the plan. Before a plan of this type can be confirmed, you have to file a preconfirmation [sic] certificate that asserts that you're current with all your secured creditors, and there isn't any such certificate filed. [9]

So, under the circumstances, the trustee's motion to dismiss will be granted.

And that deprives the Court of any further jurisdiction to hear these other matters, including those that you've brought and those brought against you…

On the same date, the Bankruptcy Court issued an order granting the Motion to Dismiss. JFS-15-25464, ECF 74. Judge Schneider determined that there was cause to dismiss the case pursuant to 11 U.S.C. § 1307(c). *Id.*[10] Although the Order did not specifically address the Emergency Motion (ECF 51), the court terminated the automatic stay. *Id.* And, as noted, at the hearing, the Bankruptcy Court concluded that its dismissal of the Bankruptcy Case deprived it of "jurisdiction" to hear outstanding matters in the case.

Also on August 22, 2016, the Bankruptcy Court dismissed the Second Adversary Proceeding as "moot." JFS-16-0257, ECF 19. The Bankruptcy Court reasoned that it was without "jurisdiction" to try the adversary proceeding because of the dismissal of the Bankruptcy Case. *Id.*

On September 2, 2016, Dailey noted an appeal from the orders of the Bankruptcy Court dismissing the Bankruptcy Case and the Second Adversary Proceeding. *See* ELH-16-3065; JFM-16-3073. As to the Second Adversary Proceeding, on December 6, 2016, in JFM-16-3073, Judge Motz affirmed the Bankruptcy Court's dismissal on the ground that the Bankruptcy

---

[9] *See* Local Bankruptcy Rule 3015-2(c).

[10] Section 1307(c) is discussed, *infra*, at 12-14.

Court's decision was not "clearly erroneous". ECF 10. The appeal as to dismissal of the Bankruptcy Case itself remains for this Court's determination.

## II. Standard of Review

In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...."); *see also Conrad v. Schlossberg*, 555 B.R. 514, 515–16 (D. Md. 2016) (citing 28 U.S.C. § 158(c)(2)); *Craddock Washabaugh v. Miller*, No. 1:16CV694, 2016 WL 4574690, at *1 (M.D.N.C. Sept. 1, 2016) (same); *Engell v. Sheetz*, No. 2:16–CV–00005–BR, 2016 WL 3579011, at *1 (E.D.N.C. June 24, 2016) (same). "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985) (internal quotations omitted); *see also In re LightSquared, Inc.*, 534 B.R. 522, 525 (S.D.N.Y. 2015) (recognizing, *inter alia*, the district court's power to remand with instructions for further proceedings).

A bankruptcy court's decision to dismiss a bankruptcy case under 11 U.S.C. § 1307(c) is discretionary. *See In re Jackson v. United States*, 131 F.3d 134 (Table), 1997 WL 746763 at *4 (4th Cir. December 4, 1997) (per curiam) ("When determining whether cause exists to warrant a dismissal or conversion, a bankruptcy court retains 'broad discretion.'") (Citation omitted). Accordingly, a district court generally reviews a decision to dismiss a bankruptcy case under 11 U.S.C. § 1307(c) for abuse of discretion. *Jacobsen v. Moser* (*In re Jacobsen* ), 609 F.3d 647, 652 (5th Cir. 2010); *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002); *In re Roberts,* 279 F.3d 91, 92 (1st

Cir. 2002); *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1223 (9th Cir. 1999); *Bulmer v. Bulmer*, No. CIV. WDQ-13-1578, 2014 WL 823659, at *7 (D. Md. Feb. 28, 2014) (citing *In re Jackson,* 131 F.3d at *4). The Fourth Circuit has said: "A district court abuses its discretion when it (1) acts 'arbitrarily, as if neither by rule nor discretion,' (2) fails to 'adequately . . . take into account judicially recognized factors constraining its exercise' of discretion, or (3) rests its decision on 'erroneous factual or legal premises.'" *United States v. Alvarado*, 840 F.3d 184, 188-89 (4th Cir. 2016) (quoting *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993)).  As noted, the same standard applies to the Bankruptcy Court.  *See* 28 U.S.C. § 158(c)(2).

The district court reviews the bankruptcy judge's findings of fact under the "clear error" standard.  *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014); *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013). A finding of fact is clearly erroneous when the record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see, e.g.*, *Andrews v. America's Living Centers, LLC*, 827 F.3d 306, 312 (4th Cir. 2016); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). And, the bankruptcy court's conclusions of law are subject to *de novo* review. *In re Taneja*, 743 F.3d at 429; *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999).

### III.  Discussion

Dailey filed her original action in the Bankruptcy Court under Chapter 13 of the Code. As explained in COLLIER ON BANKRUPTCY (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2016) ("Collier"), "Chapter 13 was designed to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income." 8–1322 Collier at ¶ 1322.01. Unlike Chapter 7 of the Bankruptcy Code, which involves

the liquidation of a debtor's assets, "a Chapter 13 bankruptcy allows the debtor to keep his assets." *In re Murphy*, 474 F.3d 143, 147–48 (4th Cir. 2007).

"To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years." *Bullard v. Blue Hills Bank*, __U.S.__, 135 S. Ct. 1686, 1690 (2015); *see also*, *e.g.*, *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) ("Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income."); *In re Dubois*, 834 F.3d 522, 526 (4th Cir. 2016) (explaining that payments under a Chapter 13 plan are made out of future income); *Carroll v. Logan*, 735 F.3d 147, 149 (4th Cir. 2013) (under Chapter 13, "debtors with regular income pay back a portion of their debts through a repayment plan"). "If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan." *Bullard*, 135 S. Ct. at 1690.

Section 1326(a) of the Bankruptcy Code governs payments to be made by the debtor before a Chapter 13 plan is confirmed. Section 1326(a)(1)(A) of the Bankruptcy Code provides: "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount . . . proposed by the plan to the trustee." Generally, "most plan payments begin[] 30 days after the filing of a chapter 13 case, or the conversion of a case to chapter 13." 8-1326 Collier ¶ 1326.02[1][a].

Involuntary dismissal of a Chapter 13 case is governed by 11 U.S.C. § 1307(c), which provides that, on the motion of a trustee or another party, "and after notice and a hearing," a case may be converted to a case under Chapter 7 or dismissed "for cause," depending on what is in

the best interests of creditors and the estate, based on a variety of reasons, including the following,  11 U.S.C. § 1307(c)(1)-(11):

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or

(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

"The grounds enumerated in subsections 1307(c)(1) through (11) are not exhaustive." 8-1307 Collier on Bankruptcy ¶ 1307.04. Reasons constituting cause for dismissal also include "judicially construed ones such as bad faith[.]" *Kestell v. Kestell* (*In re Kestell*), 99 F.3d 146, 148 (4th Cir. 1996). A "bankruptcy court is accorded considerable discretion in evaluating whether 'cause' exists and whether dismissal is the appropriate remedy.[l]" *In re Orawsky*, 387 B.R. 128, 137 (Bankr. E.D. Pa. 2008). *See, e.g., In re Demeza*, No. 1:16-BK-02789-MDF, 2017 WL

696677, at *3 (Bankr. M.D. Pa. Feb. 21, 2017) (same); *In re Kane,* No. 94-16181DWS, 1998 WL 259945, at *3 (Bankr. E.D. Pa. May 18, 1998) ("the decision of whether to dismiss a case under § 1307(c) is within the discretion of the Court"); *In re Cottle,* 189 B.R. 591 (Bankr. E.D. Pa. 1995); *In re Samuel*, 77 B.R. 520 (Bankr. E.D. Pa. 1987); 8-1307 *Collier*, ¶ 1307.04[4] ("As under the other subsections of section 1307(c) [i.e., sections other than § 1307(c)(4) ], the court's power to dismiss or convert is discretionary.").

The Bankruptcy Court did not specify in its Order whether it was dismissing the Bankruptcy Case pursuant to a particular subsection or subsections of 11 U.S.C. § 1307(c). However, the docket of the Bankruptcy Case indicates that the case was dismissed "for failure to make plan payments." *See* JFS-15-25464.

The Trustee argues that the "Debtor's delay and admitted failure to make timely plan payments" warranted dismissal pursuant to 11 U.S.C. § 1307(c).  ECF 6 at 6. The Debtor does not appear to contest that she defaulted on her Plan payments.  Rather, she blames the default on the actions of the IRS, including the Agency's imposition of AWOL and a five-day suspension without pay in April 2016.  *See generally* ECF 3-1.  In particular, Dailey claims that "more than" $3000 in salary was withheld for the five-day suspension (*id.* at 13), which amounted to over $600 per day.   She also asserts that if the Emergency Motion had been granted, she would have been able to satisfy her proposed Plan payment obligations.  *Id.* at. 2.  And, she explains that her minor child had "serious health issues." *Id.* at 13.[11]

As noted, pursuant to 11 U.S.C. § 1326(a)(1), a debtor is required to commence payments no later than thirty days after the petition date. Here, the Debtor's payments were to have

---

[11] Dailey did not raise issues regarding her child's health at the hearing held by the Bankruptcy Court on August 2016, 2016.  She did, however, mention that she spent some of her income on her child's private school education.  *See* Hearing Transcript at 5-6.

commenced on December 6, 2015, thirty days after she filed her petition on November 6, 2015, with payments due thereafter on the sixth of each month.  The Trustee filed the Motion to Dismiss the Bankruptcy Case based on the Debtor's "material default" in her proposed Plan payments.  JFS-15-25464, ECF 56.

As indicated, "failure to commence making timely payments under section 1326" is a cause for dismissal of a debtor's bankruptcy petition.  11 U.S.C. § 1307(c)(4).   "Courts considering situations in which a debtor commenced making payments but then either stopped or paid less than the plan required have considered the text of section 1307(c)(4) and concluded that a failure to *continue* making payments as required by the plan is cause for dismissal under section 1307(c)." *In re Mallory*, 444 B.R. 553, 558 (S.D. Tex. 2011) (emphasis in original), *aff'd*, 476 F. App'x 766 (5th Cir. 2012) (per curiam); *see In re Jenkins,* No. 09–36433–H3–13, 2010 WL 56003, at *2 (Bankr. S.D. Tex. Jan. 5, 2010) (finding cause for dismissal of a case in which the debtor commenced making the payments required in the proposed plan but paid an amount less than required); *In re Tashjian,* 72 B.R. 968, 972 (Bankr. E.D. Pa. 1987) ("[W]e assume that [section 1307(c)(4)] allows dismissal of Chapter 13 cases wherein the debtor not only never commences making any payments, but where he fails to continue to make such payments in regular fashion prior to confirmation.").

At the hearing on the Motion to Dismiss on August 22, 2016, counsel for the Trustee represented to the Court that as of August 22, 2016, the Debtor defaulted on three payments under the terms of her proposed Plan.  *See* Hearing Transcript at 7.  The Debtor admitted she had failed to make timely Plan payments, despite being given additional time to do so.  And, as even the Debtor admitted, she was provided with more than "two additional months" to catch up on her past due payments.  *Id.* at 5.

Furthermore, the "denial of confirmation of a plan under section 1325 . . . and denial of a request made for additional time for filing another plan or a modification of a plan" is a cause for dismissal of a debtor's bankruptcy petition.  11 U.S.C. § 1307(c)(5).  Dailey's Chapter 13 Plan was never confirmed. The record indicates that Dailey submitted several proposed plans, but no plan was ever confirmed.  Among other things, the Debtor failed to file a pre-confirmation certificate, as required by Local Bankruptcy Rule 3015-2(c), which states: "Within seven (7) days prior to the date of the initial confirmation hearing, the debtor must file a Pre-Confirmation Certificate. If a confirmation hearing is continued, an updated Pre-Confirmation Certificate must be filed within seven (7) days prior to such hearing."  The Local Bankruptcy Rules do not define a Pre-Confirmation Certificate but the form is included in the Appendix to the Local Bankruptcy Rules. *See* Local Bankruptcy Form O, "Pre-Confirmation Certification."  The form requires the debtor to certify that certain payments have been made and that taxes have been filed.

The Debtor also failed to provide for payment of all disposable income towards payments under the Chapter 13 Plan, as required by Bankruptcy Code § 1325(b)(1)(B) ("[T]he plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.").  *See also* 11 U.S.C. § 1325 (b)(2)(A)(i) (defining disposable income).  The monthly disposable income on Dailey's Schedule J form is $1,536, which was substantially more than the proposed Plan payment of $760. *See* JFS-15-25464, ECF 13, Summary of Schedules, at 19.

In my view, the record reveals a sufficient factual basis to support dismissal of Debtor's Bankruptcy Case.  I am satisfied that the Bankruptcy Court did not err or abuse its discretion in

dismissing the Bankruptcy Case, pursuant to 11 U.S.C. § 1307(c).  Therefore, the Bankruptcy

Court had no basis to resolve any remaining matters in the case, such as the Emergency Motion.

### IV. Conclusion

For the reasons stated above, I shall AFFIRM the judgment of the Bankruptcy Court.

An Order follows.


Date: March 23, 2017                              _____/s/_____
                                                  Ellen Lipton Hollander
                                                  United States District Judge